Filing # 124832445 E-Filed 04/13/2021 02:16:26 PM

IN THE COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

NEZHA MEDMOUN and all others
similarly situated,

     Plaintiffs,

                                        CASE NO.: _____

v.

HOME DEPOT U.S.A., INC., a Delaware
corporation; and U.S. INSTALLATION GROUP, INC.,
a Florida for-profit corporation,

     Defendants.

_____/

## CLASS REPRESENTATION COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, Nezha Medmoun, by and through the undersigned counsel, and hereby files this Complaint against Defendants Home Depot U.S.A., Inc. and U.S. Installation Group, Inc., and alleges as follows:

1.     This is a class action brought pursuant to § 501.211 of the Florida Deceptive and Unfair Trade Practices Act. The FDUTPA claims, asserted on behalf of Plaintiff and all similarly aggrieved consumers of this state, seek declaratory and injunctive relief, actual damages in excess of $30,000, and attorneys' fees and costs as provided for under FDUTPA §§ 501.211(2) and 501.2105.

2.     Plaintiff, Nezha Medmoun, is an individual who resides in Hillsborough County, Florida. Members of the putative class reside throughout Florida and a substantial number reside in Hillsborough County, Florida.

3.     Defendant Home Depot U.S.A., Inc. ("Home Depot") is a Delaware corporation that conducts business in Hillsborough County, Florida. Home Depot is a wholly owned subsidiary of The Home Depot, Inc. As its name implies, Home Depot is in the home improvement business.

Page 1 of 27

It actively markets and sells to consumers products which include, but are certainly not limited to, building materials, home improvement, lawn, garden, kitchen, lighting, storage, and flooring design products.

4.      Defendant U.S. Installation Group, Inc. ("USIG") is a Florida for-profit corporation that conducts business in Hillsborough County, Florida.

5.      Home Depot is a State of Delaware corporation. Home Depot is qualified to do business in the state of Florida and has its principal offices and place of business in Atlanta, Georgia. At all times relevant hereto, Home Depot had extensive contacts within the state of Florida in that Home Depot actively markets its home improvement products, including flooring products, to Florida residents by means of advertisements and a network of retail establishments operated in Florida and nationwide by Home Depot's parent company, The Home Depot, Inc. At all times relevant hereto, Home Depot has marketed and sold its home improvement products and services through its agents and representatives, including through its stores located in Hillsborough County, Florida where Home Depot regularly transacts business.

6.      Venue is proper in Hillsborough County, Florida.

7.      The causes of action giving rise to this claim arose throughout Florida in every county where Home Depot transacts business, including Hillsborough County.

8.      All conditions precedent to the filing of this action have occurred, been waived, or otherwise excused by Defendants.

9.      Plaintiff has retained The Benkabbou Law Firm, PLLC to represent her in this action and the Firm is entitled to reasonable attorney's fees.

**<u>General Allegations</u>**

10.     In or around September 2019, Plaintiff purchased flooring materials from Home Depot that were to be installed in her home.  Unbeknownst to Plaintiff, Home Depot staff encouraged her to purchase and Home Depot sold her flooring material which Home Depot knew or should have known was not suited to the climate and ground conditions in Florida.  Home Depot contracted with U.S. Installation Group, which provided flooring installers who were not trained to properly install the flooring materials.  When toxic mold inevitably grew under and around the flooring materials, Home Depot and USIG refused to hire licensed mold remediators to evaluate and remove the toxic mold.

11.     Home Depot's and USIG's conduct complained of herein is not alleged to constitute common law fraud. Rather, the claims arise from the purchase and sale of vinyl flooring, molding, purported "moisture barriers," and related products pursuant to Home Depot's unconscionable, unfair and deceptive business practices, conceived by Home Depot and implemented in every area where it does business in this state.

12.     The unconscionable, unfair and/or deceptive practices complained of herein continue at present and Home Depot will continue such business practices unless and until enjoined by an order of a court of competent jurisdiction. As a result, Plaintiff and similarly situated Florida consumers have been, continue to be, and will in the future be harmed by Home Depot's unconscionable, unfair and/or deceptive trade practices described herein.

13.     In September 2019, Plaintiff purchased flooring from The Home Depot Store #0243 located at 9941 East Adamo Drive, Tampa, Florida 33619 (the "Store").

14.     This Store is owned and operated by Home Depot.

15.     Plaintiff met with one or more salespersons and/or managers, including but not limited to Salesperson UNH478, to obtain advice and direction about the type of flooring which she should install in her home and about the options which Home Depot could provide.

16.     On or around September 30, 2019, one or more salespersons and/or managers recommended that Plaintiff purchase the following in various quantities:

    a.   HDC Stony Oak Gray Vinyl Plank 20.34;

    b.   ST-60198 Stony Oak Grey 7mm thick x 2 in. wide x 94 in. length Coordinating 3-in-1 Molding;

    c.   015623541 Teak 5/16 in. thick x 1 ¾ in. wide x 72 in. length Vinyl Multi-Purpose Reducer Molding;

    d.   015223541 Teak 5/16 in. thick x 1 ¾ in. wide x 72 in. length Vinyl T-Molding;

    e.   015543541 Teak ¾ in. thick x 2 1/8 in. wide x 94 in. length Vinyl Stair Nose Molding;

    f.   53712 Teak 6 in. x 36 in. Luxury Vinyl Plank Flooring (24 sq. ft./case);

    g.   Moisture Barriers 120 SF;

    h.   Universal Flooring Repair Kits; and

    i.   11/16 in. x 11/16 in. PFJ WM106 Quarter Round Molding.

17.     That same day, Plaintiff purchased the flooring based on the recommendation provided by one or more salespersons and/or managers employed by Defendant Home Depot.

18.     In or around October 2019, the materials described in paragraph 16 of the Complaint were delivered to Plaintiff's home for installation.

19.     Beginning in or around October 2019, Defendant USIG replaced a portion of the flooring in Plaintiff's home and installed these products in Plaintiff's home.

20.     USIG is an exclusive home flooring installer for Home Depot.

21.     USIG holds out itself and Home Depot as the same company with respect to flooring installation of Home Depot's products.

22.     After the installation, Home Depot scheduled an inspection of the flooring to ensure proper installation.

23.     The inspector identified multiple mistakes which the original installer, an employee or affiliated individual with USIG and/or Home Depot, had caused through his faulty installation.

24.     The inspector prepared a report of these deficiencies.

25.     Home Depot has a copy of the inspector's report which details the damage.

26.     Home Depot has never provided Plaintiff or her representative a copy of this report.

27.     In or around December 2019, after several attempts to have the flooring reinstalled, Plaintiff was provided with new flooring products from Home Depot in an effort to resolve the issues with USIG's faulty installation.  The new flooring products consisted of the following in various quantities:

   a.   088969537126 Vinyl Plank <A> TM Allure Teak Resistant Plank – 24 sq. ft.;

   b.   Lifeproof Shadow Hickory 18.73 sq. ft. (SKU # 1002-262-553);

   c.   Shadow Hickory 72 in. Multi-Purpose Red (SKU # 1002-231-546);

   d.   Shadow Hickory 72 in. T Mold (SKU # 1002-231-545); and

   e.   Shadow Hickory 1 in. thick (SKU # 1002-213-064).

28.     After sporadic and untimely deliveries of the aforementioned new flooring materials, another appointment was scheduled for the installer to redo the installation.

29.     The installer who came on January 17, 2020 to redo the job (the "second installer") discovered the issues that the previous installer had caused, all of which were no surprise because

Page 5 of 27

Home Depot's inspector had previously identified them and scheduled the second attempt for that reason.

30.     The second installer claimed that there was a leak underneath the floor and that Plaintiff needed to hire a plumber to fix it.

31.     The installer, however, left flooring materials at the home that he refused to install.

32.     Because Home Depot never installed the flooring, Plaintiff's family had no floor for several weeks.

33.     Plaintiff could not take the materials back to the Store because she did not purchase them directly and, as a result, had no receipt.

34.     The flooring materials have taken up valuable living space and remained an eyesore for more than a year.

35.     On February 13, 2020, Haniyah Miller, corporate counsel in Home Depot's legal department, responded to an earlier communication from a representative of Plaintiff about the failed installation.  Ms. Miller's letter is attached hereto as **Exhibit "A."**

36.     Ms. Miller took the position that "Home Depot attempted to perform the installation and found pre-existing moisture accumulating under the floor," which she referred to as "Pre-Existing Conditions." *Id.*

37.     She went on to state that, "[i]n response to [Home Depot's] discovery, [Home Depot] informed your client that the installation could not be performed until the pre-existing conditions were corrected."  She also stated that Plaintiff had "elected not to address the Pre-Existing Conditions and in response Home Depot elected to terminate the customer agreement . . . ." *Id.*

38.     Plaintiff had a plumber inspect her home as the second installer instructed.

39.     The plumber inspected the premises and did not find any leak whatsoever.

40.     The "pre-existing" moisture that the second installer discovered was in fact caused by the faulty installation and the fact that Home Depot steered Plaintiff into purchasing the wrong type of flooring.

41.     The type of flooring which Home Depot sold to Plaintiff and its defective installation caused mold to grow in the home.

42.     A representative of Plaintiff discussed the results of the defective installation with a moisture expert and provided the moisture expert with details about the type of flooring which Home Depot and/or USIG had installed.

43.     The moisture expert stated that the flooring materials which Home Direct recommended that Plaintiff purchase should never have been recommended to Plaintiff because they cause moisture due to the faulty methods used to install them in the field.

44.     Plaintiff has severe allergy issues and nerve damage which is exacerbated by the presence of mold.

45.     Plaintiff's nerve damage makes it impossible for her to keep the air conditioning running in her home because it causes migraines.  As a result, the moisture in the home increases due to the humid climate in Florida and the risk of mold growth increases.

46.     Plaintiff requested that a mold specialist inspect the home to ensure the mold damage has been fully remediated.

47.     Home Depot refused to provide or cover the cost of a mold inspection.

48.     On or around January 17, 2020, after the second installer left without replacing the flooring, Plaintiff had her adult daughter call Home Depot on her behalf to find a resolution.

49. Home Depot disconnected the call. Home Depot promised that a representative would return her call, but no one ever did so.

50. Plaintiff demanded a full refund of all of the materials and the amounts paid for the faulty installation services. Ms. Miller, however, required that Plaintiff sign a release agreement before Home Depot would provide her with a refund. The release agreement which Home Depot sent to Plaintiff is attached hereto as **Exhibit "B."**

51. Plaintiff was forced to hire a third party to replace the flooring which Defendants refused to replace and incurred additional fees for new materials and installation services.

52. There has not been any issue related to moisture, any alleged "leak," or any difficulty arising from the flooring that was installed to cure Defendants' breach of the construction agreement and faulty installation.

53. Home Depot's practices as exemplified in Plaintiff's case are widespread. These practices include:

   a. Selling and encouraging Florida residents to buy flooring materials which Home Depot knows or should know is unsuitable given the climate and ground conditions in Florida;

   b. Exclusively contracting with USIG which either installs or hires subcontractors who regularly install the flooring defectively;

   c. Refusing to provide mold remediation which develops because the flooring is not suited to Florida's climate and ground conditions and the defective installation; and

   d. Deceiving consumers into releasing their claims against Home Depot in exchange for a refund are all widespread practices.

Page 8 of 27

54.     Home Depot and its predecessor companies engaged in such practices throughout the state of Florida and elsewhere before and after the time it sold the materials to Plaintiff in 2019.

55.     Home Depot continues to engage in such practices throughout the state of Florida and elsewhere.

56.     Not only are Home Depot's practices of selling and encouraging consumers to purchase flooring which it knows is not designed for the climate and ground conditions in Florida and requiring consumers to use its exclusive installation service which defectively installs the materials, Home Depot deceived or attempted to deceive consumers into signing releases of their claims against Home Depot in order to obtain refunds to which the consumers were entitled.

57.     Under Florida law, "Every retail sales establishment offering goods for sale to the general public that offers no cash refund, credit refund, or exchange of merchandise must post a sign so stating at the point of sale. Failure of a retail sales establishment to exhibit a 'no refund' sign under such circumstances at the point of sale shall mean that a refund or exchange policy exists, and the policy shall be presented in writing to the consumer upon request." Fla. Stat. § 501.142(1).

58.     Home Depot's requirement that consumers sign a release of all claims in order to obtain refunds violates the Florida Consumer Protection Act and constitutes an unfair, deceptive and unconscionable trade practice.

59.     Consumers in the state of Florida aggrieved by Home Depot's unconscionable, unfair and/or deceptive trade practices are conservatively estimated to number in the hundreds and can be readily identified from the books and records maintained by Home Depot.

60.     Home Depot's practices complained of herein are unconscionable, unfair and are likely to mislead the average consumer. *See Davis v. Powertel, Inc.*, 776 So. 2d 971 (Fla. 1st DCA 2000) and cases cited therein.

61.     Home Depot's unconscionable, unfair and/or deceptive trade practices deny each and every Florida consumer purchasing the vinyl flooring and related installation products identified in paragraphs 16 and 27 to make an informed decision regarding his or her purchase from Home Depot.  Home Depot's business practices complained of herein were conceived and implemented by Home Depot to profit unjustly at the expense of Florida consumers.

62.     Plaintiff has complied with all conditions precedent required to pursue this action or they have been waived.

63.     Plaintiff and the putative class members are each aggrieved by Home Depot's conduct complained of herein and each has sustained a loss which they allege violates Chapter 501, *et seq.*, Fla. Stat., specifically §§ 501.201-213, which provides consumers such as Plaintiff and the members of the class she seeks to represent, protection from unconscionable, deceptive and unfair trade practices.

64.     Plaintiff has retained the undersigned law firm to represent her in this matter. Costs and attorney's fees have been and will continue to be necessarily expended for the prosecution of this action for the substantial benefit of each class member. Fla. Stat. § 501.2105. The undersigned counsel are entitled to their costs and attorney's fees for prosecuting this matter under Fla. Stat. § 501.2105.

## CLASS REPRESENTATION ALLEGATIONS

65.     The allegations in paragraphs 1 through 64 above are realleged here and fully incorporated by reference.

Page 10 of 27

66.    The FDUTPA claims are brought on behalf of Plaintiff and, pursuant to Fla. R. Civ. P. 1.220, as a class action on behalf of similarly situated persons who purchased vinyl flooring and related installation products identified in paragraphs 16 and 27 of the complaint from Home Depot and who experienced mold or moisture-related damage to one or more said flooring products during the four-year period preceding the filing of this complaint.

67.    There are definitely ascertainable plaintiff sub-classes for this FDUTPA class action, consisting of Florida residents who entered into home improvement contracts with Home Depot whom Home Depot charged for flooring materials which were not designed for installation in Florida, which suffered moisture and mold-related damage as a result, and whom Home Depot required to sign release agreements in order to obtain the refunds to which they were entitled. Florida law supports certification of such FDUTPA consumer classes. *See, e.g.*, *Davis v. Powertel, Inc.*, 776 So. 2d 971 (Fla. 1st DCA 2000) and cases cited therein.

68.    Members of the proposed consumer class are readily ascertainable. They can be identified and located with reasonable effort from Home Depot's records because Home Depot maintains records for each home improvement contract which it performs in the state of Florida, including detailed records of the amount of materials sold to consumers and consumers for whom USIG and/or any of its subcontractors installed the materials.

69.    Members of the proposed consumer class are so numerous that joinder is impractical. Because the affected Florida consumers number in the hundreds, the maintenance of these actions as a class action would be advantageous to the judicial process and the litigants.

70.    There is a well-defined community of interest of questions of law and fact which predominate over questions, if any, that affect individual class members. The FDUTPA class action presents the common question of whether the members of the class were charged by Home

Depot for flooring materials which were not designed for installation in Florida and which suffered moisture and mold-related damage and whether Home Depot's practices complained of violate FDUTPA. This action presents the same set of facts for each class member because each of them experienced the same treatment at the hands of Home Depot whose uniform practice was to:

    a.  Sell and/or encourage consumers to purchase the vinyl flooring and related installation products identified in paragraphs 16 and 27 of the complaint;

    b.  Hire USIG, its exclusive flooring installation company, to install said flooring products in consumers' homes and/or buildings;

    c.  USIG and/or one or more of its subcontractors defectively installed the flooring;

    d.  One or more of the flooring products developed mold or moisture-related damage;

    e.  Home Depot and/or USIG refused or failed to provide mold evaluation and/or remediation services by a mold remediator licensed in the state of Florida; and

    f.  Home Depot required consumers to sign a release of all claims in exchange for obtaining a refund for the purchase and/or their installation costs.

71.    Plaintiff's claims are typical of the claims of class members she seeks to represent and her interests are fully aligned with those of the other class members.

72.    The likelihood of continuing future harm to similarly situated Florida consumers is certain so long as Home Depot continues the unconscionable, unfair and/or deceptive practices, making injunctive relief appropriate.

73.    Proof of a single state of facts will establish the propriety and form of the declaratory and injunctive relief under § 501.211(1) of FDUTPA, requested on behalf of a class certified under Rule 1.220(b)(2) and will also establish the right of each member of a class certified under Rule 1.220(b)(3) to recover actual damages under § 501.211(2) of FDUTPA. Common

questions of law and fact abound. All class members' claims arise out of Home Depot's same alleged course of conduct, Home Depot's unconscionable, unfair and/or deceptive business practices conceived, implemented and continuing at present in every area where it does business in Florida with the intent to mislead consumers regarding the amount of materials actually needed to complete Home Depot's home improvement job on their homes.

74.     The particular facts and circumstances which support the conclusion that this action should be maintained as a class action, include those alleged above, which allegations have been incorporated here. Among other factors, this action involves the proof and evaluation of business practices aimed generally at the consumer class, standard marketing and sales policies and practices, all related to the marketing and sale of Home Depot's home improvement materials and services throughout Florida.

75.     Additionally, permitting a class action in this case may provide litigants with their only economically viable remedy against Home Depot. The respective interests of each member of the class in individually controlling the prosecution of separate claims against Home Depot is minimal, given the nature of the relief requested and the monetary amount at issue with respect to each individual's claim for actual damages. All of these factors demonstrate the desirability of concentrating the litigation of these many individual claims in one lawsuit. The actual damages sustained by individual class members can be determined after the court determines the common question of law which will determine Home Depot's liability, whether Home Depot, by its alleged conduct, "has violated, or is violating" FDUTPA. Any individual issues such as the amount of a class member's actual damages, do not preclude class certification.

76.     At the same time, certification of the Rule 1.220(b)(2) class for declaratory and injunctive relief under § 501.211(1) will avoid the possibility of varying and perhaps inconsistent

Page 13 of 27

adjudications if hundreds or thousands of similar claims were prosecuted in separate actions in courts throughout Florida. A class action will thus have the ameliorative effect of not only allowing for judicial efficiencies and protecting affected consumers, but will also protect Home Depot from the potential establishment of incompatible standards of conduct concerning its sale and marketing of its home improvement products in Florida.

77.     Plaintiff is not aware of any pending litigation to which any member of the class is presently a party in which the same questions are being adjudicated.

78.     Plaintiff's claims are coterminous with and do not conflict with those of other class members. Plaintiff seeks the same relief generally applicable to all class members. Plaintiff is knowledgeable about the claims asserted; aware of her responsibilities as class representative; active in the prosecution of this case and committed to continue working closely with counsel to prosecute these claims. As evidenced by her selection of competent counsel experienced in complex commercial litigation and versed in the rules governing class action discovery, certification and settlement, Plaintiff is prepared to fairly and adequately protect and represent the interests of each class member.

79.     Home Depot, by conceiving and implementing the unconscionable, unfair and/or deceptive trade practices alleged above, has acted on grounds generally applicable to all aggrieved Florida consumers who have purchased and paid Home Depot which were not designed for installation in their homes in Florida and which developed moisture and/or mold-related damage as a result. As an intended result of Home Depot's unconscionable, unfair and/or deceptive business practices such Florida consumers were: (i) denied the opportunity, prior to purchase, to make an informed and unfettered decision regarding their purchase of Home Depot's home improvement services; (ii) paid for materials which were likely to suffer mold and/or moisture

damage because they were not designed for installation in Florida; (iii) were directed or required to sign a release of all claims against Home Depot in order to obtain the refunds to which they entitled; and (iv) suffer continuing harm now and in the future unless and until Home Depot is ordered to stop its offending practices, refund the consumers for materials purchased with interest, and cover the cost of hiring a competent third party to replace the defective flooring in the consumer's home or building. Further, unless and until Home Depot is enjoined from continuing its unconscionable, unfair and/or deceptive practices, the harm now suffered by Plaintiff and similarly situated Florida consumers will continue and the unfair trade practice will affect hundreds or even more consumers now and into the future.

80.     A class of consumers represented by Plaintiff and certified under Rule 1.220 (b)(2) of the Florida Rules of Civil Procedure would herein seek primarily declaratory and injunctive relief under Chapter 501, et seq., Fla. Stat., specifically §§ 501.201-213, which provides consumers such as Plaintiff and the members of the class she seeks to represent, protection from unconscionable, deceptive and unfair trade practices under the FDUTPA. Section 501.211(1) of FDUTPA specifically provides for individual remedies in the form of declaratory and injunctive relief.

81.     Because Home Depot, through its conduct alleged to be unconscionable, unfair and/or deceptive trade practices, has acted on grounds generally applicable to all members of the proposed Rule 1.220 (b)(2) class, declaratory and injunctive relief concerning the class as a whole, to be rendered under the FDUTPA, is appropriate. A real and concrete dispute exists in which each member of the proposed class has a direct interest in the result.

82.     These claims are designed for class treatment under Rule 1.220(b)(2) because, for purposes of the requested declaratory and injunctive relief under FDUTPA, they rest primarily on

the proof and legal evaluation of Home Depot's alleged business practices, by which Home Depot is alleged to have acted on grounds generally applicable to Plaintiff and all other class members, and require this Court to determine whether such business practices exist; if so, whether Home Depot's practices complained of constitute unconscionable, unfair and/or deceptive trade practices under Florida law; and whether injunctive relief is warranted and in what form.

83.     Alternatively or additionally, Plaintiff seeks certification of a class of consumers under Rule 1.220(b)(3) of the Florida Rules of Civil Procedure to recover monetary damages for the actual losses sustained by each such class member, a remedy provided for under § 501.211(2) of FDUTPA.

84.     The Florida legislature's expressed mandate in FDUTPA to protect Florida consumers from unconscionable, unfair and deceptive trade practices, makes final declaratory and injunctive relief particularly appropriate to redress and stop Home Depot's offending practices throughout this State.  In addition, allowing these FDUTPA claims to proceed as class action under Rule 1.220(b)(2) and/or under Rule 1.220(b)(3) provides a superior method of adjudicating the claims rather than through the prosecution of hundreds or perhaps thousands of separate actions.

85.     The Rule 1.220 (b)(2) and Rule 1.220(b)(3) classes of consumers similarly situated would be comprised of all persons, who during a period from at least four years prior to the filing of this complaint, were aggrieved by Home Depot's alleged unconscionable, unfair and/or deceptive business practices. Members of the Rule 1.220(b)(3) class would also have sustained actual damages. The proposed class is comprised of those who, like Plaintiff, purchased materials from Home Depot identified in paragraphs 16 and 27 of the complaint and whose flooring suffered mold or moisture-related damage, and who, at any material time, were citizens or residents of Florida. Such class members continue to suffer harm now and will into the future unless and until

Home Depot's conduct is declared to have violated, to be violating or otherwise is likely to violate FDUTPA; suitable injunctive relief is entered to halt Home Depot's practices complained of and monetary damages are awarded, including interest, to remedy the actual losses suffered by members of this class.

86.     Excluded from the class are Home Depot and its predecessor companies, persons who are, or during the class period, have been officers or directors of Home Depot and its predecessor companies and members of officers' and directors' immediate families, legal representatives, heirs, or assigns.

87.     The Court may otherwise define the class and create subclasses as it deems necessary or desirable to adjudicate the common issues and claims of class members if, based on discovery of additional facts, the need arises.

<div align="center">

**COUNT I**
**Declaratory Relief that Home Depot's Alleged Business Practices Violate Florida Statutes Chapter 501, *et seq.***
**"The Florida Deceptive and Unfair Trade Practices Act"**

</div>

88.     The allegations in paragraphs 1 through 87 above are realleged here and fully incorporated by reference.

89.     The Florida Legislature has expressly stated that the Florida Deceptive and Unfair Trade Practices Act "shall be liberally construed to promote" its underlying policies, including the protection of "the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."

90.     FDUTPA, § 501.204(1) provides that "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

91.     Section 501.203(8) of FDUTPA provides:

(8) "Trade or commerce" means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. 'Trade or commerce' shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

92.     Home Depot is involved in conducting "trade or commerce" of "goods" and "services" within the meaning of FDUTPA.

93.     48. Plaintiff and all others similarly situated are "consumers" within the meaning of § 501.203(7) of FDUTPA.

94.     49. Section 501.211(1) of FDUTPA provides that "[w]ithout regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part."

95.     Home Depot's conduct alleged herein, related to its marketing and sales of home improvement materials to Florida consumers pursuant to a practice conceived and implemented by Home Depot which intentionally does not disclose to Florida consumers at or after purchase that the flooring materials identified at paragraphs 16 and 27 are not designed for installation in Florida due to its climate and ground conditions, are likely to suffer mold and/or moisture-related damage, and that Home Depot requires them to sign a release agreement in order to obtain a refund constitutes a violation of § 501.204 of FDUTPA. Home Depot's conduct in this regard was and is unconscionable and is intended to deceive consumers, and to treat them unfairly for Home Depot's financial gain.

96.     Home Depot's unconscionable, unfair and/or deceptive acquisition and retention of unlawful profits comprised of the monies it makes from its refusal to issue refunds for defective

products which it intentionally sells to Plaintiff and the other members of the class she seeks to represent, under the circumstances alleged herein, constitutes further violations of FDUTPA.

97.     Plaintiff and other members of the class of Florida consumers she seeks to represent who purchased materials from Home Depot pursuant to the unconscionable, unfair and/or deceptive trade practices alleged, are persons aggrieved by a violation of FDUTPA and are entitled under § 501.211(1) to obtain a declaratory judgment that Home Depot's alleged practices violate FDUTPA and under § 501.211(2) to recover reasonable attorney's fees and court costs as provided in § 501.2105.

98.     A finding of fraud is not necessary to sustain a violation under FDUTPA. Plaintiff and members of the classes of affected Florida consumers she seeks to represent, are not alleging common law fraudulent conduct on the part of Home Depot with respect to the business practices of which they complain.

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, demands judgment declaring that Home Depot's conduct complained of herein violates the Florida Deceptive and Unfair Trade Practices Act, and the costs of this action against Home Depot, together with reasonable attorney's fees.

## COUNT II
### Injunctive Relief Under Florida Statutes Chapter 501, et seq.,
### "The Florida Deceptive and Unfair Trade Practices Act"

99.     The allegations in paragraphs 1 through 87 above are realleged here and fully incorporated by reference.

100.     Home Depot's practices with respect to the marketing and sale of its home improvement products and services as alleged herein, in violation of FDUTPA, continue at present and will continue unabated, unless and until prohibited by this court. Plaintiff, members of the

classes she seeks to represent, and other Florida consumers may suffer similar violations by Home Depot in current and future home improvement purchase transactions if Home Depot's conduct complained of herein is not enjoined by this court.

101.    Plaintiff and the Rule 1.220(b)(2) class she seeks to represent, have no adequate remedy at law and they and the consuming public in Florida will or are likely to continue to suffer irreparable harm unless Home Depot's unlawful practices alleged herein are enjoined.

102.    Plaintiff and other members of the Rule 1.220(b)(2) class of Florida consumers she seeks to represent who purchased home improvement materials pursuant to Home Depot's unconscionable, unfair and/or deceptive trade practice alleged, are persons aggrieved by a violation of FDUTPA and, are entitled, under § 501.211(1) to seek an injunction against Home Depot to permanently enjoin Home Depot's conduct that has violated, is violating, or is otherwise likely to violate the FDUTPA and under § 501.211(2) to recover reasonable attorney's fees and court costs as provided in § 501.2105.

103.    A finding of fraud is not necessary to sustain a violation under FDUTPA. Plaintiff and members of the Rule 1.220(b)(2) class of affected Florida consumers she seeks to represent, are not alleging common law fraudulent conduct on the part of Home Depot with respect to the business practices of which they complain herein.

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, demands that an injunction be entered against Home Depot under § 501.211(1) or the equitable powers of this court, permanently enjoining Home Depot's conduct in violation of the Florida Deceptive and Unfair Trade Practices Act and to take other steps as this court may deem necessary to make these consumers whole, the costs of this action against Home Depot, together with reasonable attorney's fees.

## COUNT III
### Actual Damages Under Florida Statutes Chapter 501, et seq.,
### "The Florida Deceptive and Unfair Trade Practices Act"

104.     The allegations in paragraphs 1 through 87 above are realleged here and full incorporated by reference.

105.     Plaintiff and each member of the proposed Rule 1.220(b)(3) class have sustained actual damages resulting from Home Depot's unconscionable, unfair and/or deceptive trade practices alleged herein. Each was denied an opportunity to make an informed decision with respect to the home improvement services she or she purchased from Home Depot. Additionally, each was a victim of Home Depot's practices of charging consumers for flooring materials which were not designed for installation in Florida, which suffered moisture and mold-related damage as a result, and whom Home Depot required to sign release agreements in order to obtain the refunds to which they were entitled.  Further, Home Depot has been unjustly enriched by virtue of the refusal to issue refunds to consumers for products which it knew or should have known were designed for the consumers' use unless consumers sign release agreements waiving their claims against them. Pursuant to the unconscionable, unfair and/or deceptive trade practices alleged herein, Home Depot has collected and continues to collect and retain the monies paid to Home Depot by Plaintiff and other class members in connection with their purchase of home improvement materials from Home Depot pursuant to Home Depot's unconscionable, unfair and/or deceptive trade practices.

106.     Plaintiff and others similarly situated did not agree that Home Depot should receive such a benefit under the circumstances by which each was affected by the unconscionable, unfair and/or deceptive trade practice conceived and implemented by Home Depot in every area where it does business in Florida. As a result thereof, to the extent Home Depot has charged and received

Page 21 of 27

payments from Plaintiff and others similarly situated for materials which it knew or should have known were not designed for use in Florida homes and for which Home Depot has not refunded the class members, each has been further damaged and should be refunded accordingly, with interest at the Florida statutory rate.

107.    A finding of fraud is not necessary to sustain a violation under FDUTPA. Plaintiff and members of the class of affected Florida consumers she seeks to represent, are not alleging common law fraudulent conduct on the part of Home Depot with respect to the business practices of which they complain herein.

108.    Home Depot knowingly and voluntarily accepted and has wrongfully retained the economic benefits of its illegal conduct.

109.    If Home Depot's business practices alleged herein are declared by this court to violate FDUTPA, it would be inequitable for Home Depot to retain the unlawfully obtained excess benefits it has received from Plaintiff and the class she seeks to represent.

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, demands judgment for actual damages under § 501.211(2), and related relief including prejudgment interest and the costs of this action against Home Depot, together with reasonable attorney's fees.

## COUNT IV - BREACH OF CONTRACT (against Home Depot)

110.    Plaintiff and all others similarly situated reallege and incorporate herein by reference paragraphs numbered 1 through 87.

111.    Home Depot entered into written customer agreements with Plaintiff and the other class members to provide flooring and installation services.

112.    Home Depot breached those agreements by failing to provide proper installation services and by unilaterally terminating the agreement.

113.    Home Depot also refused to issue refunds unless Plaintiff and the other class members which the class members are entitled to receive in accordance with Home Depot's purchase policies given that she and the class she seeks to represent did not receive the benefit of the bargain under the agreements.

WHEREFORE, premises considered, Plaintiff and all others similarly situated are entitled to recover actual and compensatory damages, pre- and post-judgment interest, and all relief the Court deems just and proper.

### COUNT V– BREACH OF CONTRACT (against USIG)

114.    Plaintiff and all others similarly situated reallege and incorporate herein by reference paragraphs numbered 1 through 87.

115.    USIG entered into written agreements to install flooring that Plaintiff and other members of the class of Florida consumers she seeks to represent purchased from Home Depot, on behalf of Home Depot, expressly for the benefit of the class members.

116.    The services performed by USIG for Plaintiff and other members of the class of Florida consumers she seeks to represent arising out of USIG's obligation under its agreement with Home Depot clearly establishes that Plaintiff and other members of the class of Florida consumers she seeks to represent were the beneficiaries of the agreement between the Defendants.

117.    The fact that Plaintiff and other members of the class of Florida consumers she seeks to represent were the intended beneficiaries of the contract between USIG and Home Depot created a binding legal obligation between Plaintiff and USIG.

118.    Defendant USIG breached the agreements.

Page 23 of 27

WHEREFORE, premises considered, Plaintiff and all others similarly situated entitled to actual and compensatory damages, pre- and post-judgment interest, and other relief the Court deems just and proper.

### COUNT VI – NEGLIGENCE (against USIG)

119.    Plaintiff and all others similarly situated reallege and incorporate herein by reference paragraphs numbered 1 through 87.

120.    USIG owed Plaintiff and other members of the class of Florida consumers she seeks to represent a duty to properly install the flooring that she and the class members purchased from Home Depot at their homes.

121.    USIG failed to meet that duty by:

   a.  Installing the flooring improperly, which required it to be torn out and removed;

   b.  Refusing to cure the damage to the property that was the result of installing the flooring improperly;

   c.  Increasing the likelihood that moisture and mold to develop in and underneath the flooring as a result of the improper installation; and

   d.  Causing physical harm to the Plaintiff and other members of the class of Florida consumers she seeks to represent as a result of the toxic mold which resulted.

122.    As a proximate and direct result, Plaintiff and other members of the class of Florida consumers she seeks to represent suffered injury to their property, the inability to use and quietly enjoy the property, and the damage to their health as a result of the exposure to the mold growth associated with the improperly installed flooring.

Page 24 of 27

WHERFORE, premises considered, Plaintiff and all others similarly situated are entitled to actual and compensatory damages, pre- and post-judgment interest, and all other relief deemed just and proper by the Court.

## COUNT VII – NEGLIGENCE (against Home Depot)

123.    Plaintiff and all others similarly situated reallege and incorporate herein by reference paragraphs numbered 1 through 87..

124.    Plaintiff and other members of the class of Florida consumers she seeks to represent allege, in the alternative, that Home Depot owed Plaintiff and the class members a duty to properly install the flooring that they purchased from Home Depot at their homes.

125.    Home Depot failed to meet that duty by:

    a.  Installing the flooring improperly, which required it to be torn out and removed;

    b.  Refusing to cure the damage to the property that was the result of installing the flooring improperly;

    c.  Increasing the likelihood that moisture and mold to develop in and underneath the flooring as a result of the improper installation; and

    d.  Causing physical harm to the Plaintiff and other members of the class of Florida consumers she seeks to represent as a result of the toxic mold which resulted.

126.    As a proximate and direct result, Plaintiff and other members of the class of Florida consumers she seeks to represent suffered injury to their property, the inability to use and quietly enjoy the property, and the damage to their health as a result of the exposure to the mold growth associated with the improperly installed flooring.

WHERFORE, premises considered, Plaintiff is entitled to actual and compensatory damages, pre- and post-judgment interest and all other relief deemed just and proper by the Court.

### COUNT VIII – BREACH OF EXPRESS WARRANTY (against Home Depot)

127.    Plaintiffs and all others similarly situated reallege and incorporate herein by reference paragraphs numbered 1 through 87. .

128.    At the time purchased the flooring materials described in paragraphs 16 and 27 of the complaint, Home Depot represented that the flooring materials were of sufficient quality for use in homes of Plaintiff and other members of the class of Florida consumers she seeks to represent.

129.    Home Depot and its employees promised and insured that the flooring materials described in paragraphs 16 and 27 of the complaint would remain in good condition for multiple years after USIG, its exclusive installer of home flooring products, installed them.

130.    Plaintiff and other members of the class of Florida consumers she seeks to represent relied on the representations by Home Depot and its skill and judgment that the goods were fit for the purpose for which Plaintiff and the class members intended to use them and Home Depot employees were aware of the same.

131.    Plaintiff and other members of the class of Florida consumers she seeks to represent have provided notice of the breach of warranty to Home Depot.

132.    Plaintiff and other members of the class of Florida consumers she seeks to represent demand relief for the injuries sustained and damages arising therefrom.

### JURY TRIAL DEMANDED

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a jury trial on all issues so triable.

Page 26 of 27

Dated April 13, 2021.

Respectfully submitted,

THE BENKABBOU LAW FIRM, PLLC

*/s/ Salma Benkabbou*
Salma Benkabbou, Esq.
Florida Bar No. 112385
Jade Alexander Craig, Esq.
Florida Bar No. 121805
620 E. Twiggs Street, Suite 303
Tampa, Florida 33602
Primary: salma@benkabboulawfirm.com
Primary: jade@benkabboulawfirm.com
Secondary 1: blfbusinessteam@gmail.com
Secondary 2: admin@benkabboulawfirm.com
Phone: (813) 586-3351
Attorneys for Plaintiff

# EXHIBIT A

Haniyah Miller
Corporate Counsel
Commercial Litigation
Mail Code: C-20
haniyah_miller@homedepot.com

February 13, 2020

Salma Benkabbou
The Benkabbou Law Firm, PLLC
620 E. Twiggs Street, STE. 306
Tampa, FL 33602

RE:    Case: 17598920; Agreement H0243-135178 - Flooring Installation (the
"Installation")

Ms. Benkabbou,

This letter is in response to your recent communications to Home Depot U.S.A., Inc. ("**Home Depot**") regarding concerns in connection with the Installation. This matter has been escalated to Home Depot, legal department.

Home Depot attempted to perform the Installation and found pre-existing moisture accumulating under the floor (the "**Pre-existing Conditions**"). In response to our discovery, we informed your client that the Installation could not be performed until the Pre-existing Conditions were corrected. Your client has elected not to address the Pre-existing Conditions and in response Home Depot elected to terminate the customer agreement H0243-135178 in accordance with Paragraph 8 of the Home Improvement Agreement.

However, Home Depot has agreed to refund (i) $834.01 in connection with the products upon return to Home Depot and (ii) $1,919.01 in connection with the labor upon receipt of a signed Settlement and Release Agreement. The requirement for a Settlement and Release Agreement is a result of labor expended during the commencement of performance.

If you would like to accept this offer, please return an executed copy of the enclosed Release to us on or before **February 25, 2020** at which time this offer will expire. Should you have any questions, please feel free to contact me directly via email.

Regards,

Haniyah Miller
Corporate Counsel

# EXHIBIT B

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("**Agreement**") is entered into between HOME DEPOT U.S.A., INC. ("**Home Depot**") and NEZHA MEDMOUN ("**Customer**") on the 13th day of February 2020.

**WHEREAS**, disputes have arisen between Home Depot and Customer regarding Customer's flooring installation, Order No. H0243-135178 (the "**Transaction**").

**NOW THEREFORE**, for and in consideration of the mutual covenants, agreements, promises, releases and payments provided for herein, the receipt and sufficiency of which is hereby acknowledged by each party hereto, Home Depot and Customer agree to the following settlement:

1.      Home Depot agrees to refund Customer the amount of Two Thousand Seven Hundred Fifty-Three Dollars and Two Cents ($2,753.02) to the original form of payment within fifteen (15) business days following Home Depot's receipt of an executed copy of this Agreement.

2.      Customer fully releases and discharges Home Depot, and its officers, parents, subsidiaries, affiliates, employees, agents, contractors, vendors, surety and bonding companies, from any and all claims, actions, damages, losses, and liability of every kind relating to the Transaction.  Customer further agrees to waive any and all warranty claims and agrees that any and all applicable warranties, either for the product or installation or both, are hereby null and void and are of no force and effect.

3.      Customer acknowledges and agrees that neither Citibank, N.A. d/b/a "Home Depot Credit Services" ("**Citibank**") nor GreenSky Trade Credit, LLC d/b/a "Home Depot Loan Services" ("**GreenSky**") is a party to this Agreement and that any obligations that Customer may owe to Citibank or GreenSky are not released or affected by this Agreement.

4.      Customer has not and will not submit any chargeback request to the issuer of any credit card or loan account used in connection with the Transaction.  In the event such chargeback request has occurred or Customer requests such chargeback after the execution of this Agreement, Customer will be required to return to Home Depot any refunds set forth in this Agreement.

5.      Customer expressly agrees: **(i)** that the contents of this Agreement are confidential; **(ii)** not to share or offer information regarding this Agreement to any person or entity with the exception of Customer's immediate family, attorneys, or accountants; and **(iii)** to refrain from publishing, to the public or privately, through the Internet or any other means of communication, information regarding this Agreement or the underlying dispute.  In the event that Customer is asked about this Agreement or the underlying dispute, Customer will respond only that the matter has been resolved and will provide no further information. Notwithstanding the foregoing, nothing in this Agreement will prevent Customer from responding truthfully to an inquiry from any government entity.

6.      This Agreement constitutes the entire agreement between the parties and supersedes all prior negotiations and discussions, oral or written, which are merged in this document.

7.      The parties acknowledge that they have read and fully understand this Agreement, that they have had the opportunity to consult with counsel if they wish, and that each has executed this binding agreement freely and without compulsion.

8.      This Agreement is to be construed and enforced under the laws of the State of Florida.

9.      This Agreement cannot be assigned, amended, modified or terminated without the express written consent of all parties.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

CUSTOMER                                      HOME DEPOT U.S.A., INC.

_____  _____      By_____
NEZHA MEDMOUN                              JOHN GAFFORD, DISTRICT SERVICES MANAGER